RECORD NUMBER: 13-2548

# United States Court of Appeals
## *for the*
# Fourth Circuit

---

**LORD & TAYLOR, LLC,**

*Appellant,*

– v. –

**WHITE FLINT, L.P., f/k/a White Flint Mall, LLP,**

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT

# REPLY BRIEF OF APPELLANT

MICHELLE DEFINIS GAMBINO
KEVIN B. BEDELL
DAVID G. BARGER
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard
Suite 1200
McLean, VA 22102
(703) 749-1300

*Counsel for Appellant*
*Lord & Taylor, LLC*

CP  COUNSEL PRESS • VA – (800) 275-0668

# TABLE OF CONTENTS

**Page**

SUMMARY OF REPLY ........................................................................1

I.   WHITE FLINT INCORRECTLY STATES THE STANDARD
     OF REVIEW. .......................................................................4

II.  WHITE FLINT NOW CONCEDES STATE LAW APPLIES ...........5

    A.   Summary Judgment Was Improperly Granted Because
     Lord & Taylor Raised Material Issues Of Fact That
     Satisfied The Showing Required In *Redner's*. .........................6

    B.   The District Court Improperly Found Lord & Taylor
     Would Not Be Irreparably Harmed Because Damages
     Could Allegedly Suffice for White Flint's Breach of the
     Covenants...............................................................................7

    C.   The District Court Erred In Considering White Flint's
     Own Self-Inflicted Hardships. .................................................11

    D.   The District Court Committed Reversible Error By
     Considering The "Public Interest" Factor.................................12

III. THE INJUNCTION SOUGHT WAS FEASIBLE. ...........................12

    A.   Lord & Taylor Sought Only Negative Injunctive Relief. .........18

    B.   Lord & Taylor's Complaint Did Not Ask The Court To
     Order White Flint To Rebuild a Competitor's Store Or
     To Repopulate The Mall. ........................................................19

    C.   White Flint Wrongfully Recharacterizes The Declaratory
     Relief Sought in Count I As The Injunctive Relief. ................21

    D.   The Trial Court Made Unauthorized Findings of Fact At
     The Summary Judgment Stage Pertaining To The
     Feasibility of the Injunction...................................................24

i

CONCLUSION .................................................................................................28

STATEMENT IN SUPPORT OF ORAL ARGUMENT .......................................29

CERTIFICATE OF COMPLIANCE ...................................................................30

CERTIFICATE OF SERVICE ...........................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*8600 Assocs., Ltd. v. Wearguard Corp.*,
  737 F.Supp. 44 (E.D. Mich. 1990) ............................................................17

*Adams v. Trustees of the Univ. of N. Carolina-Wilmington*,
  640 F.3d 550 (4th Cir. 2011) ....................................................................5

*CBL & Assocs., Inc. v. McCrory Corp.*,
  761 F. Supp. 807 (M.D. Ga. 1991) ...........................................................17

*Chestnut Real Estate P'ship v. Huber*,
  811 A.2d 389 (Md. Ct. Spec. App. 2002)................................................*passim*

*Colandrea v. Wilde Lake Cmty. Assoc. Inc.*,
  761 A.2d 899 (Md. 2000) .........................................................3, 11, 13, 18

*Dumbarton Imp. Assn., Inc. v. Druid Ridge Cemetery Co.*,
  73 A.3d 224 (Md. 2013) ...............................................................1, 8, 13, 18

*Eastside Vend Distributors, Inc. v. Pepsi Bottling Group, Inc.*,
  913 A.2d 50 (Md. 2006) ...........................................................................15

*Eisenstadt v. Barron*,
  250 A.2d 354 (Md. 1969) ...........................................................7, 8, 13, 18

*Glen Burnie Shopping Plaza, Inc. v. Schreiber Bros., Inc.*,
  152 A.2d 807 (Md. 1959) .........................................................................13

*Grand Union Co. v. Laurel Plaza, Inc.*,
  256 F.Supp. 78 (D. Md. 1966).................................................................13

*Grubb v. Guilford*,
  178 A.2d 886 (Md. 1962) .................................................................3, 13, 19

*Kemp v. Kemp*,
  411 A.2d 1028 (Md. 1980) .......................................................................15

*Lowden v. Bosley*,
  909 A.2d 261 (Md. 2006) ........................................................................8, 9

iii

*M. Leo Storch Ltd. P'ship v. Erol's, Inc.*,
    620 A.2d 408 (Md. Ct. Spec. App. 1993)......................................................17

*Mikolasko v. Schovee*,
    720 A.2d 1214 (Md. Ct. Spec. App. 1998).......................................12, 14, 19

*Redner's Markets, Inc. v. Joppatowne G.P. Ltd. P'ship*,
    No. RDB-11-1864, 2013 WL 2903285 (D. Md. June 12, 2013) ..........*passim*

*Souza v. Columbia Park & Rec. Assn., Inc.*,
    522 A.2d 1376 (Md. Ct. Spec. App. 1987)...................................3, 14, 15, 19

*Wollard v. Gallagher*,
    712 F.3d 865 (4th Cir. 2013) ...........................................................................4

*Yaffe v. Scarlett Place Residential Condo., Inc.*,
    205 Md.App. 429, 45 A.3d 844 (Md.Ct. Spec. App. 2012) ...................15, 16

## Other Authorities

Fed. R. Civ. P. 56 ...................................................................................2, 11

## SUMMARY OF REPLY

Appellee White Flint L.P. ("White Flint") attempts to run from the two words that doom its appeal—"restrictive covenants."  White Flint makes a protracted effort throughout its entire brief to intentionally avoid using those words in the hopes that this Court will treat the binding restrictive covenants as simple contract obligations with relatively little significance.  White Flint, however, is bound by the restrictive covenants it created on the White Flint Shopping Center Site ("Site"), and is prohibited from demolishing the Enclosed Mall, its parking lots and common areas and constructing its planned redevelopment while those restrictive covenants are in effect ("Restrictive Covenants").  J.A. 491-580.[1]  Under Maryland law, the Restrictive Covenants must be enforced in equity as a matter of course, regardless of whether White Flint could make billons by redeveloping the property without them.  *Redner's Markets, Inc. v. Joppatowne G.P. Ltd. P'ship*, No. RDB-11-1864, 2013 WL 2903285 (D. Md. June 12, 2013); *City of Bowie v. MIE Prop.*, Inc. 922 A.2d 509 (Md. 2007); *Dumbarton Imp. Assn., Inc. v. Druid Ridge Cemetery Co.*, 73 A.3d 224 (Md. 2013); *Chestnut Real Estate P'ship v. Huber*, 811 A.2d 389 (Md. Ct. Spec. App. 2002).

Similarly, White Flint attempts to avoid reminding the Court that Count II was dismissed on summary judgment, where all Lord & Taylor had to do was raise

---

[1] "J.A." refers to Joint Appendix

genuine issues of material fact that: (i) restrictive covenants exist on the Site; (ii) White Flint's proposed Sketch Plan violates those covenants; and (iii) equity favors the enforcement of the covenants. *Redner's*, 2013 WL 2903285, at *5-6. Surprisingly, White Flint *does not contest* that Lord & Taylor satisfied its burden under Rule 56 by raising numerous fact issues on each element. Nevertheless, the district court committed reversible error by disregarding these fact issues and granting White Flint's partial summary judgment motion ("Motion") and dismissing Count II.

To try to salvage the district court's ruling, White Flint now argues that the ruling should be upheld because summary judgment was granted "solely" on the basis that it was not feasible for the district court to prohibit White Flint from intentionally violating the Restrictive Covenants. This argument is incorrect and misstates the district court's own rationale. J.A. 716-807. The district court dismissed Count II because it found that damages provided Lord & Taylor an adequate remedy at law, that the County's alleged interest (as recited by one County employee) trumped Lord & Taylor's right to enforce its existing property rights, and that White Flint's purported hardships outweighed those of Lord & Taylor. J.A. 797-801. The court committed reversible error by relying upon these factors because Maryland law specifically provides: (i) irreparable harm need *not* be shown in order to enjoin the breach of a restrictive covenant; (ii) only the

equities of the *parties*—not third parties—should be considered when determining whether to enforce private restrictive covenants; and (iii) the comparative hardship to a party who intentionally violates restrictive covenants, like White Flint here, cannot be considered. *See Redner's*, 2103 WL 2903285, *5-6; *see also Chestnut*, 811 A.2d 389; *Souza v. Columbia Park & Rec. Assn., Inc.*, 522 A.2d 1376 (Md. Ct. Spec. App. 1987); *Grubb v. Guilford*, 178 A.2d 886 (Md. 1962); *Colandrea v. Wilde Lake Cmty. Assoc. Inc*., 761 A.2d 899 (Md. 2000).

Finally, the district court's ruling should be reversed because it was entirely feasible to grant the negative injunctive relief sought by Lord & Taylor.  Count II asked the district court to enforce the Restrictive Covenants by permanently enjoining White Flint from demolishing the Enclosed Mall, its common areas and parking lots for the remaining term of the Easement Agreement. J.A. 12.  The Enclosed Mall, its common areas and parking garage exist and are entirely intact. J.A. 639-645, 756-757.  Tenants are still operating within the Mall and customers are visiting the Mall and restaurants on a daily basis.  J.A. 639-645, 756-757.  The negative injunctive relief sought required no judicial oversight and could have been accomplished in a one sentence order stating: "White Flint shall not destroy the Enclosed Mall, its common areas, or parking lots contrary to Section 6.1(b) of the Easement Agreement while the Easement Agreement is in effect."  Thus, the dismissal of Count II was harmful error and should be reversed.

## I. WHITE FLINT INCORRECTLY STATES THE STANDARD OF REVIEW.

White Flint's statement of the standard of review is incorrect, and indeed approaches being deceptive in its inaccuracy. White Flint argues that the abuse of discretion standard relevant to the issuance of injunctions trumps the *de novo* standard that applies to summary judgment. This is wrong. White Flint's own cases do not support its statement. White Flint cites *Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013) for the proposition that "the abuse of discretion standard applies even where injunctive relief is denied on summary judgment." Appellee's Brief at 20, ECF No. 32. In *Woollard*, however, this Court affirmed that the *de novo* standard of review applies. This Court stated:

> Consistently with the summary judgment standard, our review of a decision granting an injunction is de novo where the contested issue is a question of law. [] That is, although "decisions pertaining to injunctive relief normally are reviewed solely for abuse of discretion in applying the injunction standard, we review such a decision de novo where it rests solely on a premise as to the applicable rule of law and the facts are established or of no controlling relevance."

*Woollard*, 712 F.3d at 873 (citations omitted). Because this case was decided on summary judgment, the only questions the district court could have decided were questions of law. The district court could not have made any factual findings. If there were factual questions to be decided, then summary judgment was not appropriate. *See Adams v. Trustees of the Univ. of N. Carolina-Wilmington*, 640 F.3d 550, 556 (4th Cir. 2011).

4

This case involves no discretionary judgments so the abuse of discretion standard cannot apply. Lord & Taylor is not asserting that the district court erred because it exercised discretion and declined to supervise the repopulation of the Mall, or equivalently, that this Court should decide that question differently and therefore reverse the district court. Rather, the district court erred because it misapplied the law: it applied federal instead of state law; it made findings as to contested facts during summary judgment; and it ignored the relief that Lord & Taylor actually requested—a negative injunction prohibiting destruction of the Mall. Those are legal errors, not discretionary judgments, and are reviewed *de novo*.

## II.    WHITE FLINT NOW CONCEDES STATE LAW APPLIES.

White Flint moved for summary judgment arguing that under the federal standard for injunctive relief, Lord & Taylor could not show: irreparable harm; that the public interest favored an injunction; or that Lord & Taylor's hardships outweighed White Flint's. *See* Mem. Supp. of Def.'s Summ. J. Mot. (Dkt. No. 15) 9-10 & n.2. *Critically, White Flint never moved for summary judgment under the state law permanent injunction standard for this claim*. In fact, even after Lord & Taylor pointed out that White Flint was using the wrong legal standard, White Flint continued to argue that the federal factors warranted summary judgment. J.A. 725-733, 737-38. The district court was persuaded by White Flint's erroneous

arguments, and cited those federal factors when it granted White Flint's Motion. J.A. 797-801. Under Maryland law, however, none of those factors should have been considered.

In fact, White Flint now concedes this, stating "[t]he District Court, sitting in diversity, was required to apply Maryland law to Lord & Taylor's request for a permanent injunction in Count II." Appellee's Opp'n at 21. In doing so, White Flint effectively concedes that its argument to the district court was based on the wrong law and, correspondingly, that the district court's acceptance of White Flint's arguments rested on the wrong law. White Flint's reversal is thus tantamount to an admission that the district court committed legal error.

A.    **Summary Judgment Was Improperly Granted Because Lord & Taylor Raised Material Issues Of Fact That Satisfied The Showing Required In *Redner's*.**

In order to be entitled to permanent injunctive relief to stop a violation of a restrictive covenant in Maryland, all that must be shown is that restrictive covenants exist, that they are being breached, and equity favors enforcement of the covenants. *Redner's,* 2013 WL 2903285, *5-6; *Chestnut*, 811 A.2d at 289; *Eisenstadt v. Barron*, 250 A.2d 354 (Md. 1969). Lord & Taylor submitted evidence in opposition to White Flint's Motion showing that White Flint is bound by the Restrictive Covenants, that those covenants would be breached if White Flint demolishes the Mall and constructs the Sketch Plan, and that equity favors the

6

enforcement of the Restrictive Covenants. *See* J.A. 490-688. Neither the district court nor White Flint contested that Lord & Taylor offered sufficient evidence to preclude summary judgment on any of these elements. Thus, the court committed reversible error by granting White Flint's Motion.

> **B.      The District Court Improperly Found Lord & Taylor Would Not Be Irreparably Harmed Because Damages Could Allegedly Suffice for White Flint's Breach of the Covenants.**

White Flint urged the district court both in its Motion and at argument that equitable relief should not be given because monetary damages would suffice. Def.'s Mem. Supp. Summ. J. at 11; J.A. 720. The district court erroneously agreed with White Flint, and relied on this as a basis for its dismissal of Count II:

> Maryland law makes it clear that specific performance is an extraordinary remedy that should be granted only where more traditional remedies, such as damages, are either unavailable or inadequate. The parties before me are big boys, and they manage to calculate all kinds of things, and … there is [sic] plenty of procedures that can be followed to determine what damages might be in this case. It is clear that Lord & Taylor is assuming that [if] the case proceeds forward and actually gets litigated, [it] has been suffering some damages that I will assume is a breach for the purposes of discussion now, and will continue to suffer some losses. Whether those losses will come to an end and turn around, and perhaps Nirvana will arrive and they will start making a lot of money is something I think is fully subject to reasonable calculation, and I think that for me to enter into this case and try an enjoin an ongoing development project like this is just not feasible for the court to entertain when the damage remedy is clearly available and I think adequate.

J.A. 800-01.

7

The district court again noted in its Order denying Lord & Taylor's Motion to Stay that it would not reconsider its erroneous ruling because, "Lord & Taylor can be adequately compensated by monetary damages as there is readily available historical sales date to calculate any lost profits. Lord & Taylor is a sophisticated party and any loss caused by this assumed breach is subject to reasonable calculation." J.A. 813-814. The district court erred in this reasoning for two reasons. First, Maryland law does not require a showing of irreparable harm for the injunction to issue. Second, there is irreparable harm.

Maryland law specifically provides that irreparable harm need not be shown where a mandatory injunction is sought to enforce restrictive covenants. *Redner's*, 2013 WL 2903285, at *5-6; *Chestnut*, 811 A.2d at 398; *c.f. Eisenstadt*, 250 A.2d at 85. Irreparable harm is presumed for violations of property rights, and an injunction will usually issue as a matter of course to give effect to restrictive covenants and prevent future violations. *See Chestnut*, 811 A.2d at 398; *Dumbarton.*, 73 A.3d at 224; *Lowden v. Bosley*, 909 A.2d 261, 266 (Md. 2006) (stating if the plain intention of the covenants is clear on their face, there is nothing left to do but to carry out the covenants' terms).

In fact, there is not one case in Maryland where a party has sued for an injunction to stop the intentional violation of a restrictive covenant and the court has refused to grant the injunction because monetary damages were an available

remedy. The reason is obvious. Monetary damages cannot *stop* the continuous and intentional breach of a restrictive covenant. Moreover, restrictive covenants could never "run with the land" if they could simply be bought off with money. Thus, granting White Flint's Motion on the grounds that Lord & Taylor had an adequate remedy at law for the continuous violation of its property rights was reversible error.

Although White Flint now concedes for the first time that Lord & Taylor did not have to show irreparable harm in order for Count II to survive, it continues to maintain that Lord & Taylor will not be irreparably harmed by its wrongful acts. This is wrong. Lord & Taylor *did* establish that it would be irreparably harmed by the destruction of the Enclosed Mall, parking lots and other structures. J.A. 490-674. Lord & Taylor further demonstrated how it would be irreparably harmed by the construction of White Flint's prohibited mixed use project. *See id.*

White Flint's claim that "historical sales figures" somehow undo the irreparable harm is likewise wrong. None of the cases White Flint cites where historical sales figures are used to calculate future lost profits involve the violation of restrictive covenants. They also do not involve situations like this case where the variables upon which those historical sales figures are based will be destroyed in their entirety. There are no sales figures, nor any other evidence, that could be used to accurately forecast how Lord & Taylor's business will be affected over the

9

next forty years if the Site is demolished and replaced with an entirely new development.

Finally, White Flint does not dispute the fact that there are simply too many unknown variables and factors that make calculating Lord & Taylor's damages nearly impossible for the next 40 years. *See* Appellee's Brief at 44-47. White Flint's only response to this fatal flaw is that more information will be available at a "future date." This, however, misses the point. The district court decided on December 20, 2013 that Lord & Taylor was not entitled to injunctive relief because, *as of that date*, Lord & Taylor had an adequate remedy at law. J.A. 800-01. By White Flint's own admission, none of information that would be necessary to attempt to reasonably calculate damages is currently known. For example, White Flint does not know what it may get approval to build on the Site (there is no final site plan approved), whether White Flint will have the necessary funding to build some or all of its mixed use plan, whether demand will exist for the prohibited uses White Flint seeks to build on the Site, and how Lord & Taylor's business, demographic and pedestrian flow will be affected.

Because irreparable harm is not a factor to be considered under Maryland law, and irreparable harm was shown, it was error to grant summary judgment on the basis that Lord & Taylor had an adequate remedy at law.[2]

## C.    The District Court Erred In Considering White Flint's Own Self-Inflicted Hardships.

White Flint does not contest that the district court was precluded under Maryland law from considering the purported hardship of White Flint if it was enjoined. *See Grubb*, 178 A.2d at 888; *Colandrea*, 761 A.2d at 912 n.7. Nevertheless, that is exactly what the district court did. White Flint claimed that it should not be enjoined because it had already removed the Bloomingdales store, taken steps to vacate tenants from the mall, and spent a significant sum developing its Sketch Plan. J.A. 367-373, 716-807. The district court relied on these factors by stating that it could not enjoin White Flint given the "significant investment" that White Flint had taken to transform the Mall to a viable enterprise. J.A. 801. It was reversible error, however, for the court to consider these purported hardships

---

[2] White Flint's brief contains numerous unsubstantiated allegations that are not supported by the record in this case, and therefore, should not be considered. Similarly, in an "after the fact" attempt to rely upon new facts in support of its Summary Judgment Motion, White Flint served a second affidavit of Ed DeAvilia with its Reply brief. This affidavit was not properly before the district court under Fed. R. Civ. P. 56(c) nor should it be considered by this Court. S*ee Seay v. Tennessee Valley Auth*., 339 F.3d 454, 481-82 (6th Cir. 2003); *Beaird v. Seagate Tech., Inc.* 145 F.3d 1159, 1163-65 (10th Cir. 1998). Moreover, the allegations, contained therein are vehemently disputed.

11

because they were all self-inflicted injuries that White Flint knowingly undertook despite having knowledge of the Restrictive Covenants and Lord & Taylor's repeated objections to the proposed redevelopment.  J.A. 639-656, 667-673, 623-638.  At the very least, the district court should have denied White Flint's Motion because a fact issue existed as to those purported hardships.

### D.    The District Court Committed Reversible Error By Considering The "Public Interest" Factor.

The district court erroneously considered Montgomery County's interest (as recited by only one county employee) when determining whether Lord & Taylor was entitled to injunctive relief.  J.A. 800-01.  When determining whether an injunction should issue to enforce a private party's restrictive covenants, only the equities of the *parties*—not third parties such as the County—are to be considered. *Redner's*, 2013 WL 2903285, *5-6.  In addition, the Maryland Court of Appeals has repeatedly stated that local governmental approval of a proposed concept plan does not negate the enforcement of private restrictive covenants.  *See, e.g.*, *Mikolasko v. Schovee,* 720 A.2d 1214, 1224 (Md. Ct. Spec. App. 1998).  Thus, it was error to consider the County's purported interest when determining whether the court should enforce the parties' Restrictive Covenants.

## III.   THE INJUNCTION SOUGHT WAS FEASIBLE.

White Flint agreed that if it violated the Restrictive Covenants, it could be sued in equity for specific performance of its obligations under those covenants.

J.A. 552.  This remedy is commonplace in Maryland, as the Maryland Court of Appeals has long held that an injunction is the proper remedy available to a lessee who seeks to enforce its property rights and prevent future violations of such covenants.  *Grand Union Co. v. Laurel Plaza, Inc*., 256 F. Supp. 78, 87 (D. Md. 1966); *Colandrea*, 761 A.2d at 912 (injunctive relief is entirely appropriate for violations of private covenants); *Glen Burnie Shopping Plaza, Inc. v. Schreiber Bros., Inc*., 152 A.2d 807 (Md. 1959).  In fact, the Maryland Court of Appeals has repeatedly held that a court is obligated to give effect to restrictive covenants, rather than looking for ways to avoid enforcing them.  *City of Bowie*, 922 A.2d at 525.  To that end, if unambiguous covenants exist that are only binding on the property for a fixed duration, then courts should hold the parties to their bargain and enforce the covenants.  *See id*. at 524.

The only effective way to give meaning to restrictive covenants when they are being violated is to enjoin the breach.  Maryland courts have repeatedly used equity to enjoin a party from intentionally breaching an innocent party's restrictive covenants.  *See e.g., Colandrea*, 761 A.2d at 912, *Dumbarton*, 73 A.3d at 233, *Chestnut*, 811 A.2d at 389. *Redner's*, 2013 WL 2903285, *5-6, *Eisenstadt*, 250 A.2d at 85, *City of Bowie*, 922 A.2d 509, *Grubb*, 178 A.2d 886, *Kirkley v. Seipelt*, 128 A.2d 430 (Md. 1957), *Mikolasko*, 720 A.2d at 1214, *Souza*, 522 A.2d at 1376; *Cattail Assoc., Inc. v. Sass*, 907 A.2d 828, 844 (Md. App. 2006) (specific

13

performance appropriate for the sale of land); *Jones v. Magruder*, 42 F. Supp. 193 (D. Md. 1941) (specific performance enforcing covenant for renewal of lease); *Coomes v. Aero Theatre and Shopping Center*, 114 A.2d 631 (Md. 1955) (specific performance to enforce a covenant regarding usage of land).

In fact, there are no reported cases in Maryland where, after finding breach, a court has *ever* declined to issue an injunction when sought to enforce a valid restrictive covenant. Nevertheless, White Flint argues against this point by asserting that under Maryland law, "an injunction is 'a drastic remedy,' resting with the discretion of the Court," that courts do not grant injunctions or specific performance which require ongoing supervision, and that "courts frequently apply this rule in the shopping center context." Appellee's Brief at 21-25. This line of argument misstates the law at every step.

White Flint cites a number of cases where Maryland courts have made the general statement that specific performance involves "extraordinary" relief. What White Flint fails to tell the Court is that *none* of these cases involve restrictive covenants or situations remotely similar to this case. In *Ammendale Normal Inst., Inc. v. Schrom Constr., Inc.*, plaintiff sought an injunction preventing defendant from continuing mining operations because defendant had made two payments late. 264 Md. 617 (Md. 1972). The court noted that injunctions are preventative of future wrongs, not punishment for past wrongs. *Id*. at 622-23. Because the

14

injunction was solely punitive for previous late payments, and was disproportionate to the harm, it was a "drastic remedy" that was not appropriate. *Id*. at 623. *Eastside Vend Distributors, Inc. v. Pepsi Bottling Group, Inc.* concerned a request for a preliminary injunction against alleged antitrust violations in pricing. 913 A.2d 50 (Md. 2006). In *Kemp v. Kemp*, the court upheld specific performance of a divorce decree. 411 A.2d 1028 (Md. 1980). And, in *William F. Wilke, Inc. v. Dep't of Army*, this Court upheld the denial of a preliminary injunction prohibiting the Government from proceeding with a contract bid submitted five minutes late, noting that the violation was "technical" and the successful bidder "gained no actual competitive advantage in its late bid submission." 485 F.2d 180, 182 (4th Cir. 1973). These cases simply say nothing about whether an injunction should issue to enjoin ongoing and intentional violations of restrictive covenants.

White Flint's reliance on *Yaffe v. Scarlett Place Residential Condo., Inc*., 45 A.3d 844 (Md. Ct. Spec. App. 2012), is similarly misplaced. In *Yaffe*, condominium owners sued for specific performance of a contract requiring defendant to perform certain construction work to remediate water leaks. *Id*. at 848. The court declined to require specific performance because damages would suffice to remedy the breach. *Id*. at 858. The court also noted that "there is a general rule, that contracts for the construction or repair of buildings should not be

15

specifically enforced 'on account of the great difficulty and often impossibility attending a judicial superintendence and execution of the performance.'" *Id.* at 859 (citation omitted). Unlike *Yaffe*, this case involves property rights—rather than simple contract rights—which, as discussed above, are routinely enforced with specific performance. In addition, Lord & Taylor has not asked White Flint to perform any construction work of any kind.

White Flint's assertion that courts will not issue an injunction or order specific performance where such relief would require ongoing supervision and enforcement also overstates the law. Again, White Flint cites no cases addressing restrictive covenants. While ongoing supervision can be a factor weighing against injunction relief, such supervision must be complex and highly involved. For example, in *United States v. Paramount Pictures*, on which White Flint relies, the requested injunction would have required the court to run a competitive bidding process for films, exercise judgment as to which bid was highest and when the bids might be on different bases (for example a flat rental bid versus a percentage). 334 U.S. 131, 161-66 (1948). Such cases have no relevance to the issues in this case because the injunction sought by Lord & Taylor was prohibitory in nature and did not require White Flint to take any affirmative acts.

White Flint also mistakenly asserts that courts "frequently apply this rule in the shopping center context" to deny injunctions. The three cases upon which

16

White Flint relies, however, all involve a landlord seeking an injunction requiring a store to stay in business based on a continuous operation clause in a lease. *See M. Leo Storch Ltd. P'ship v. Erol's, Inc.*, 620 A.2d 408 (Md. Ct. Spec. App. 1993), *CBL & Assocs., Inc. v. McCrory Corp.*, 761 F. Supp. 807, 808-09 (M.D. Ga. 1991), *8600 Assocs., Ltd. v. Wearguard Corp*., 737 F. Supp. 44, 45-46 (E.D. Mich. 1990). Each court declined to issue an injunction because doing so would require it to determine at a future time whether the store was operating with "due diligence and efficiency" to maximize sales, thereby placing the court in the position "of managing a retail … operation," and forcing a party to operate a business they no longer desire. *Storch*, 620 A.2d at 412, 414. None of these cases address the situation presented here, where an injunction is sought to prevent a landlord from tearing down a shopping center in contravention of unambiguous restrictive covenants.

Finally, White Flint does not identify *any* cases that refute the well settled rule that injunctions are to issue as a matter of course when a landlord attempts to breach a tenant's restrictive covenants. In such situations, injunctive relief is routinely given in order to protect the property rights vested in the tenant. *See Redner's*,  2013 WL 2903285, at *6; *Grand Union Co*., 256 F. Supp. at 78; *Glen Burnie*, 152 A.2d at 807; *Maryland Trust Co. v. Tulip Realty Co. of Md. Inc*., 153

17

A.2d 275 (Md. 1959); *Slice v. Carozza Properties, Inc.*, 137 A.2d 687 (Md. 1958)

*Coomes*, 114 A.2d at 631.

### A.    Lord & Taylor Sought Only Negative Injunctive Relief.

Lord & Taylor's Complaint asked the district court for prohibitive injunctive relief: (1) preventing the demolition the Enclosed Mall, its common areas, and parking lots; (2) preventing White Flint from constructing its proposed Sketch Plan while the Easement Agreement is in effect; and (3) preventing White Flint from prematurely vacating any additional tenants from the Mall so it could be demolished.  J.A. 18, 20.  All that was necessary to give effect to this requested relief was an order that stated: "White Flint shall not destroy the Enclosed Mall, its common areas and parking lots contrary to Section 6.1(b) of the Easement Agreement while the Easement Agreement is in effect."  If White Flint was simply told that it was prohibited from tearing down these structures, White Flint would be unable to proceed with construction of its Sketch Plan and it would have no need to vacate tenants from the Mall.  J.A. 716-807.  This negative injunction was (and is) entirely feasible and requires no judicial oversight.  In fact, Maryland courts routinely grant this type of prohibitory relief.  *See e.g*., *Colandrea*, 761 A.2d at 912, *Dumbarton*, 73 A.3d at 233, *Chestnut*, 811 A.2d at 389. *Redner's*, 2013 WL 2903285, *5-6, *Eisenstadt*, 250 A.2d at 85, *City of Bowie*, 922 A.2d at 509,

*Grubb*, 178 A.2d at 886, *Kirkley*,  128 A.2d at 430, *Mikolasko*, 720 A.2d at 1214, *Souza*, 522 A.2d at 1376.

Moreover, White Flint did not prove as a matter of law that this prohibitory relief was not feasible, nor can it.  White Flint has been abiding by Section 6.1(b) of the Easement Agreement for thirty five (35) years *without any judicial oversight*.  There is no reason it cannot be required to continue to do so.

**B.    Lord & Taylor's Complaint Did <u>Not</u> Ask The Court To Order White Flint To Rebuild a Competitor's Store Or To Repopulate The Mall.**

White Flint acknowledges Lord & Taylor sought the negative injunctive relief noted above, but claims that enjoining White Flint from demolishing the Mall, its common areas, and parking lots would somehow also require the court to oversee the "reconstruction" of the Bloomingdale's Site and "re-tenanting" of the Mall.  Appellee's Brief at 1.  White Flint cannot cite a single sentence in Lord & Taylor's Complaint where Lord & Taylor asks the court to compel White Flint to rebuild a competitor's (Bloomingdale's) store or to repopulate the Mall.  Such requests simply do not exist.  Moreover, Lord & Taylor repeatedly responded to these misrepresentations by stating in open court that it was NOT asking the court to order either the reconstruction of Bloomingdale's or repopulation of the Mall.  J.A. 738, 739, 742-5, 750, 761.   The district court, however, ignored these statements and the fact that the Complaint did not ask for this relief, and claimed

19

that it was not feasible for it to grant an injunction because it would have to oversee the reconstruction and reletting of the Mall. J.A. 796-801. This was reversible error.

Even if the district court did misapprehend the relief sought in Count II as requiring *both* negative injunctive relief (preventing the demolition) and affirmative relief (whether the rebuilding of Bloomingdale's or the repopulating of the Mall), the district court still committed reversible error by dismissing Count II *in its entirety*, rather than limiting the granting of summary judgment to the relief it believed was not be feasible. The district court's action was akin to granting judgment against a plaintiff who proved only part (as opposed to the full) of the amount of monetary damages for which it prayed in a complaint. Of course, the routine result is to award plaintiff those damages that it proved, and not deny it all relief.

Here, the court could have granted summary judgment against the injunctive relief it believed was infeasible (construction/repopulating), while also allowing the negative injunctive relief requested (which is feasible) to survive summary judgment.[3] In fact, Maryland law states that it is entirely appropriate to issue an injunction for a violation of a restrictive covenant by framing a writ that, according

---

[3] Even if an "abuse of discretion" standard of review applies, the district court abused its discretion by dismissing Count II in its entirety rather than allowing the negative injunctive relief to survive.

to the circumstances, commands an act which the court regards as essential to justice, or restraining an act which it esteems contrary to equity and good conscience. *Colandrea*, 761 A.2d at 911. Thus, it was entirely feasible (and still is) for the district court to enter an injunction prohibiting White Flint from demolishing the Mall and its parking lots in order to give effect to the Restrictive Covenants. Failing to do so renders the Restrictive Covenants meaningless and turns well settled law pertaining to restrictive covenants on its head. *See Providence Square Assoc., LLC v. G.D.F.,* 211 F.3d 846 (4th Cir. 2000) (finding that when a restrictive covenant is negotiated between two commercially savvy corporations, the covenants must be read to have some meaning); C*ity of Bowie*, 922 A.2d 509 (it is the court's duty to enforce covenants rather than look for ways to invalidate them).

### C. White Flint Wrongfully Recharacterizes The Declaratory Relief Sought in Count I As The Injunctive Relief.

While White Flint acknowledges in its brief to this Court that Lord & Taylor asked for an "injunction stopping the redevelopment," it also claims for the first time that Lord & Taylor also requested that the Court require White Flint to operate a first class mall *by way of injunction*.[4] Appellee Brief at 28. This is

---

[4] White Flint partially misquotes paragraph 44 of the Complaint so that its meaning is taken out of context. Paragraph 44 asks the court to enforce the Easement Agreement's terms by way of declaring that White Flint is obligated to run a first

wrong.  First, White Flint is confusing the declaratory relief sought in Count I with the injunctive relief sought in Count II.  In Count I, Lord & Taylor asked the Court to declare the terms of the Easement Agreement binding and that "Landlord is required to carry out its obligations under the Agreement, including . . . operating a first class high fashion retail Shopping Center on the Shopping Center Site."  J.A. 15.  Lord & Taylor requested in its "Prayer for Relief" that the court declare that the Easement Agreement requires White Flint to operate a first class Mall on the Shopping Center Site.  J.A. 20.

The injunctive relief sought by Lord & Taylor, however, is broken out separately in the "Prayer for Relief" section of the Complaint where Lord & Taylor unequivocally asks the district court in subsection (B) to prevent Landlord from changing the Shopping Center Site in a way that is inconsistent with the plot plan, and in subsection (C) to enjoin Landlord from carrying out its Redevelopment Plan to the extent it violates the Restrictive Covenants.  J.A. 20.  Lord & Taylor does *not* ask the Court to issue an injunction affirmatively requiring White Flint to

_____

class mall (Count I), and then to "enjoin Landlord from taking any steps to prematurely vacate the Mall's retail tenants while the Agreement is in effect." Paragraph 44 does not ask the district court to mandatorily enjoin White Flint by forcing it to run a first class mall on the premises.  If anything, Lord & Taylor reiterated that this relief was not being sought when it stated "all we are asking for . . . is injunctive relief to stop [White Flint] from knocking down the mall.  If they can't knock down the mall, they might think twice about ridding it of its tenants, as they have done….[White Flint] might just start refilling the mall itself so they can make money."  J.A. 761.

operate a first class mall. J.A. 20. Similarly, Lord & Taylor refuted this same argument when it stated, "Lord & Taylor is seeking a negative injunction which would prohibit White Flint from redeveloping the Shopping Center and vacating its tenants in violation of the restrictive covenants" and "Lord & Taylor is not presently seeking any affirmative relief." *See* Pl.'s Mem. in Opp'n to Def.'s Partial Summ. J. Mot. (Dkt. No. 44) at 37. Lord & Taylor also repeatedly stated in open court that all it was seeking was a negative injunction tied to stopping the demolition of the Mall and construction of the proposed Sketch Plan. J.A. 738, 739, 742-5, 750, 761.

Moreover, although White Flint erroneously claims that Lord & Taylor asked the district court to somehow oversee the running the Mall, the district court made no such finding when it granted the White Flint's Motion. J.A. 800. Instead, the district court stated that it did not believe the injunction was feasible because it questioned whether it could fashion a remedy that would "require a rebuilding [of the Bloomingdale's Site] or bringing tenants back in [the Mall]". J.A. 800. Thus, the record does not support White Flint's new claim as to why the district court granted White Flint's Motion.

D.    **The Trial Court Made Unauthorized Findings of Fact At The Summary Judgment Stage Pertaining To The Feasibility of the Injunction.**

White Flint now also argues that statements by the district court in its order denying Lord & Taylor's Motion to Stay provide further rationale for granting summary judgment. White Flint points to the district court's statements that it was "concerned over the length of time it took Lord & Taylor to assert its rights," and that the project is "well into the advanced stages" such that it would not have been practical to keep the Mall in its current state because the Mall was almost "completely vacant" and "partially demolished;" thus the injunction was not feasible. J.A. 814. While this appears to be the court's rationale solely as to why it would not grant Lord & Taylor's Motion to Stay, if the district court relied on these conclusions when it granted summary judgment, then it committed reversible error by making factual findings where there was conflicting evidence.

First, the district court's concern about the length of time it took for Lord & Taylor to bring suit against White Flint is not well founded. Lord & Taylor by no means sat on its rights, nor did White Flint claim that Lord & Taylor either waived its rights or was barred by laches. To the contrary, immediately after Lord & Taylor received a copy of the Sketch Plan, it objected to its terms. J.A. 623-638,

24

667-673.[5]  In response, White Flint falsely represented to Lord & Taylor it would not take any actions that would violate the Easement Agreement, and instead would take all of Lord & Taylor's objections into account and attempt to work on an acceptable solution.  J.A. 623-625, 648-656, 667-673.  Throughout the process of working in good faith with White Flint, Lord & Taylor however repeatedly made it clear that it was not waiving its rights.  *See* J.A. 623-625, 628-638, 648-656, 667-673.

However, in the spring of 2013, White Flint went back on its word and, for the first, time claimed that it intended to pursue its proposed redevelopment irrespective of the Restrictive Covenants and Lord & Taylor's property rights. White Flint also stated, for the first time, that it would not change any of its Sketch Plan despite leading Lord & Taylor to believe for the better part of six months that it would significantly alter the plan in an attempt to salvage Lord & Taylor's business at the Site.  *See id.*  This complete "about face" caused Lord & Taylor to immediately file this suit.  Thus, at the very least, this issue of fact should have

---

[5] While White Flint claims that Lord & Taylor should have objected to the County's passing of the White Flint Sector Plan, there is no mechanism that would have allowed it to do so.  The County's passing of its own policies and procedures is a quasi-administrative act and third parties have no right to formally object. Further, Lord & Taylor has no obligation to troll the passing of any county policy, as Lord & Taylor's rights arise from its private agreement with White Flint, and the county was already on notice of Lord & Taylor's property rights, both by the land records and the terms of its own Sector Plan.  J.A. 674-687.

precluded the district court from finding that an injunction would not be feasible because of the time it took to bring suit.

In addition, it was error for the court to find that an injunction was not feasible because the Mall was "almost vacant." First, it is not clear how this is relevant to Lord & Taylor's request that the structures themselves not be demolished. Second, the Mall is not "almost vacant." Lord & Taylor continues to operate at the Site, as do other large in-line retail tenants who occupy a substantial portion of the entire Mall. Moreover, customers continue to frequent the Mall on a daily basis.[6] J.A. 756-757. In addition, the cause of the vacancy rates was contested, which alone should have precluded summary judgment. J.A. 639-647. Finally, as there was evidence that White Flint was solely responsible for the vacancy rate because it wanted to hasten demolition of the Mall, the court should not have considered this self-inflicted hardship White Flint brought about as part of its basis for granting summary judgment. *See Grubb*, 178 A.2d at 886; *Eisenstadt*, 250 A.2d at 85; *Colandrea*, 761 A.2d 899.

The district court also erred when it made factual findings that the Mall was "partially demolished" and that the redevelopment was already in "advanced

---

[6] The grounds for White Flint's assertions that much of the mall is vacant are not clear, but it appears to be based on the number of tenants rather than the space occupied. Because many of the departed tenants were very small stores, the percentage of departed tenants is substantially higher than the percentage of vacant space.

stages." J.A. 813-815. There is absolutely no evidence supporting these findings. If anything, the evidence on these issues refutes the district court's conclusions. To date, only one solitary building, a Bloomingdale's store, has been removed from the entire 45 acre Shopping Center Site. This store was on its own separate tract and falls outside the provisions of the Restrictive Covenants. J.A. 490-580. The Mall, parking lots and common areas, which all *do* fall within the protections of the Restrictive Covenants are still standing, have not been demolished in any way, and are fully operational. J.A. 756-757. There was simply no evidence before the court that any of the parking lots, common areas, or the Mall itself had been removed. The district court, however, jumped to its own conclusion, and indeed was surprised when Lord & Taylor's counsel pointed out that the Mall was still standing and fully operational. *See id.* Nevertheless, and despite conflicting evidence, the district court still decided that it would not issue an injunction because the Mall had been "partially demolished." This finding was clear error.

Likewise, the district court's factual finding that the redevelopment was in an "advanced stage," was also incorrect. Lord & Taylor presented evidence showing that White Flint is still only in the very early stages of its effort to change the Site, and has not even submitted, let alone had approved, a final development plan to redevelop the Site. J.A. 581-622, 674-687.

27

The district court's conclusion that an injunction was not feasible was in error for all of the reasons stated herein. In granting White Flint's Motion, the district court became the first court in Maryland to ever find that an injunction will not issue to stop the willful and intentional violation of enforceable restrictive covenants. Because the law in Maryland requires otherwise, the district court's Order should be reversed. Failing to do so would render the Restrictive Covenants, which run with the land, entirely meaningless.

## CONCLUSION

For the reasons set forth in Lord & Taylor's Brief and Reply, the district court erred in granting summary judgment and dismissing Lord & Taylor's request for specific performance and injunctive relief. Accordingly, Lord & Taylor respectfully asks that the district court's ruling granting White Flint's Partial Summary Judgment be reversed.

Respectfully submitted,

s/_____
Michelle D. Gambino
David G. Barger
Kevin B. Bedell
GREENBERG TRAURIG LLP
1750 Tysons Blvd., Suite 1200
McLean, VA 22102
gambinom@gtlaw.com
bargerd@gtlaw.com
bedellk@gtlaw.com
Tel: (703) 749-1300
*Counsel for Appellants*

28

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Lord & Taylor believes that oral argument will assist the Court in resolving the issues presented in this case and requests that oral argument be expeditiously scheduled.

29

## CERTIFICATE OF COMPLIANCE

**Word count:**

 As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 6,933 words (excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)).  I relied on my word processor to obtain the count, using Microsoft Word 2010.

**TypeFace:**

 In addition, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times Roman, 14 pt.

s/_____

31

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2014, copies of the foregoing Reply were served electronically on counsel for the parties of record through the CM/ECF notification system.

s/_____

Michelle D. Gambino
David G. Barger
GREENBERG TRAURIG LLP
1750 Tysons Blvd., Suite 1200
McLean, VA  22102
gambinom@gtlaw.com
Tel: (703) 749-1300
Fax: (703) 749-1301

*Counsel for Appellants*